UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENNITA GOWINS,

    Plaintiff,

v.                                                                         Case No. 8:18-cv-1369-T-SPF

ANDREW M. SAUL,[1]
Commissioner of the Social
Security Administration,

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on May 15, 2014 (Tr. 125–26, 244–56). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 166–71, 175–86). The ALJ held a hearing at which Plaintiff appeared and testified (Tr. 58–93). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

disabled and, accordingly, denied Plaintiff's claim for benefits (Tr. 34–57). Subsequently, Plaintiff requested review from the Appeals Council, which was denied (Tr. 4–10). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## FACTUAL BACKGROUND AND THE ALJ'S DECISION

Plaintiff, who was born in 1974, claimed disability beginning November 8, 2012 (Tr. 125–26, 244–49, 250–56). Plaintiff obtained a high school education (Tr. 280). Plaintiff's past relevant work experience included work as a nurse's assistant (Tr. 79–80). Plaintiff alleged disability due to cerebral palsy with a leg length discrepancy, osteopenia, migraine headaches, history of esotropia with a status post eye surgery, mental problems, hallucinations, bi-polar disorder, anxiety, depression, allergies, and high cholesterol (Tr. 61, 279).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity since November 8, 2012, the alleged onset date (Tr. 38). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: cervical spondylosis, cerebral palsy, leg length discrepancy, osteopenia, bilateral hand arthralgias, migraine headaches, costochondritis, history of esotropia, status post eye surgery, major depressive disorder, and anxiety disorder (Tr. 40). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 42). The

ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a range of sedentary work, with some exertional and non-exertional limitations (Tr. 42). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of symptoms were not entirely consistent with the objective medical evidence (Tr. 43–44).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform any past relevant work (Tr. 50). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a document preparer, a pari-mutuel ticket checker, and a final assembler (Tr. 50–51). Based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 52).

## **LEGAL STANDARD**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological

abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff raises one general issue on appeal—whether the ALJ's RFC and hypotheticals posed to the VE properly accounted for Plaintiff's mental impairments, chronic migraine headaches, and her need to use a cane for ambulation and balance. The Commissioner argues that the ALJ's RFC determination and hypothetical questions to the VE accounted for Plaintiff's stated impairments. For the reasons that follow, the ALJ's decision is affirmed.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record on what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

### I. Mental Impairments

Plaintiff first challenges the ALJ's RFC determination arguing that the ALJ only discussed treatment notes which supported his decision but ignored the majority of the other contrary medical evidence. Particularly, Plaintiff claims that the ALJ failed to discuss the majority of notes from Gracepoint documenting the severity of Plaintiff's mental issues including hallucinations, crying spells, isolation, irritability, poor appetite, etc. (Doc. 27 at 24).

The Commissioner's findings of fact must be grounded in the entire record. A decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based on substantial evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th

Cir.1986). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995)).

Upon review of the record, the Court finds that in assessing Plaintiff's mental impairments, the ALJ properly considered the record as a whole and his decision is supported by substantial evidence. At step four of the sequential evaluation process the ALJ concluded that despite Plaintiff's alleged physical and mental impairments, she could perform sedentary work if it is simple and low stress (Tr. 48). To support his finding, the ALJ considered Plaintiff's mental assessments by Drs. Angeles Alvarez-Mullin and James A. Brown stating that despite Plaintiff's mental limitations, Plaintiff could carry out, at least, simple and routine tasks, in a socially appropriate manner, for low demands (Tr. 49). The ALJ also considered Plaintiff's testimony regarding her activities of daily living (Tr. 41, 48), which the ALJ concluded contradicted her reported social limitations due to mental issues. Specifically, the ALJ found that Plaintiff could meet most of her daily needs and caring for her children with minimal assistance or encouragement; cook meals for her family, use public transportation, go to church, manage her own finances, and handle her hygiene and grooming independently (Tr. 48, 302–04).

The ALJ also discussed, Plaintiff treatment notes at Gracepoint and although the ALJ did not discuss every single medical finding in his decision, the ALJ's analysis clearly discussed Plaintiff's limitations arising from her mental impairments. For

7

example, the ALJ noted that Plaintiff received mental health services through Gracepoint since July 17, 2012, and that she reported seeing and hearing things that are not there, experiencing mood swings, irritability, racing thoughts, difficulty concentrating, and self-isolation (Tr. 451). The ALJ also considered the side effects of Plaintiff's medication including muscle cramping with Risperdal, and daytime sedation with Zoloft (Tr. 380, 441). However, the ALJ noted that Plaintiff reported less mental symptoms during follow-up appointments (Tr. 385, 436) and that by March 25, 2014, Plaintiff reported improvement in her symptoms and better control of her impairments with medications (Tr. 441). The ALJ also noted that by November 3, 2014, Plaintiff was described as being in the "maintenance stage" of her treatment and her mental status evaluation indicated that her motor activity was purposeful and calm, her eye contact, memory, attention, and concentration were good, and her speech was normal (Tr. 433, 435).

Plaintiff objects to the ALJ's statement that Plaintiff's mental status was at the "maintenance stage." Specifically, Plaintiff argues that the term "maintenance stage" could mean several things, including that her psychiatrist was maintaining her on a particular medication regime (Doc. 27 at 24). In the field of mental health, the Transtheoretical Model (TM), also known as the stages of change model, describes an individual's readiness to change behavior.[2] In this context, "maintenance stage" indicates an improvement on an individual's mental health status (*See* Tr. 449 showing

---

[2] *See* Prochaska JO, et. al, *In Search of How People Change: Applications to Addictive Behaviors* (1992), available at https://www.ncbi.nlm.nih.gov/pubmed/1329589; Tiffany A. Edwards, et. al., *Stages of Change as a Correlate of Mental Health Symptoms in Abused, Low-Income African American Women* (2006), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1635429/#R47.

that in 2013 Plaintiff was in the "action stage," which is an earlier step of recovery in the TM). Moreover, the record supports a finding that Plaintiff's mental impairments were not as limiting as she alleged (Tr. 41, 48–49, 385, 436, 441, 433, 435). In sum, a review of the ALJ's decision shows that despite failing to discuss every piece of evidence, the ALJ properly considered the record as a whole in evaluating Plaintiff's mental impairments.

## II.  Plaintiff's Headaches

The ALJ discounted Plaintiff's complains of disabling headaches on three grounds—Plaintiff's medication, lack of objective findings, and conservative treatment. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv) & (v) (considering efficacy of medications and level of treatment seek to relief in treating symptoms); 20 C.F.R. §§ 404.1529(c)(4) (only those symptoms consistent with the objective medical evidence and other evidence of record are considered functionally limiting). Particularly, the ALJ found that Plaintiff's use of Propanol provided proper relief for her symptoms; the medical treatment notes failed to show that Plaintiff's headaches produced neurological symptoms or obvious distress; and despite one visit to the emergency room for headache symptoms, Plaintiff's brain CT scan was normal (Tr. 47–48).

To support his findings, the ALJ discussed various treatment notes addressing Plaintiff's headaches starting with a visit to the emergency room on April 11, 2014. The ALJ noted that despite Plaintiff's reported headaches, Plaintiff's diagnostic signs and imaging were generally unremarkable, and she was discharged the same day with no complications (Tr. 390–92). The ALJ also discussed medical records from October 27,

9

2014, through July 19, 2016, in which Plaintiff reported migraine headaches but the objective testing and physical signs appeared generally unremarkable (470, 489, 525–26, 535–36, 560, 591, 593). Further, the ALJ noted that after Plaintiff was started on sumatriptan to control her headaches in October 2014, Plaintiff reported that her headaches had slow down and Plaintiff's physical examinations were normal and show no neurological problems (Tr. 502, 507, 505, 510–511). By April 23, 2015, the ALJ noted that claimant reported only moderate relief from her headaches while using ibuprofen and Goody powder (Tr. 533–37). Plaintiff was then put on Topamax, but later reported that Topomax was not helping (Tr. 528). On October 10, 2015, Plaintiff was prescribed Proponal (Tr. 527). The ALJ noted that after her dose of Proponal was increased on November 11, 2015 (Tr. 558–60), Plaintiff reported significant relief of her symptoms, and by December 12, 2015, Plaintiff reported her headaches resolved with the Propanol (Tr. 550, 564). Finally, the ALJ noted that Plaintiff was referred to a neurologist about her migraines, but she never followed through with the referral (Tr. 507, 524, 527, 528, 536, 555).

The ALJ's conclusion that Plaintiff's headaches were resolved with an increased dose of Propanol relies on evidence outside the relevant period of alleged disability. *See Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 892 (11th Cir. 2011) ("Evidence is irrelevant and immaterial when it relates to a time period after the eligibility determination at issue.") (citation omitted)). Specifically, Plaintiff's treatment with Proponal begun on October 10, 2015 (Tr. 527), but the relevant period of alleged disability is November 8, 2012—alleged onset date—to December 31, 2014—date Plaintiff was last insured.

10

Therefore, the ALJ's reasoning to discount Plaintiff's testimony on this ground is not supported by substantial evidence.

Nevertheless, the Court finds that the ALJ properly articulated other reasons to discount Plaintiff's subjective complaints and that these reasons are supported by substantial evidence. The evidence from the relevant period shows that Plaintiff did not exhibit neurological symptom or other physical limitations arising from her headaches (Tr. 46–47, 392, 470, 504, 511, 574, 591, 593). Further, Plaintiff's argument that her headaches would have cause absenteeism from work is unsupported. The ALJ noted that the record did not indicate that Plaintiff missed treatment visits because of her mental or physical impairments, rather she missed treatments due to problems with transportation (Tr. 48). The ALJ's credibility determination is further supported by Plaintiff's failure to visit a specialist for her headaches despite multiple referrals. Although, Plaintiff explains that she was having trouble getting to the neurologist and faxing the necessary paperwork (Tr. 528, 534), there is no indication in the record that once she obtained the necessary paperwork, she tried to comply with these visits (Tr. 555, 558, 560). *See* 20 C.F.R. §§ 404.1529(c)(3)(vi). While Plaintiff argues that the record supports a contrary conclusion as to Plaintiff's mental limitations and headaches, the ALJ provided a thorough analysis of the record and substantial evidence supports the ALJ's findings. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (stating that "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings"). Therefore, the Court finds no error.

### III. Use of an Assistive Device

Plaintiff also alleged that the ALJ failed to consider Plaintiff's need for a cane for ambulatory and balancing purposes in assessing her RFC. According to the Social Security Regulations

> [t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96–9p. At the hearing, Plaintiff testified that she uses a cane to avoid tripping and falling (Tr. 70). While Plaintiff points to medical records noting that she was observed to have difficulty with walking and balance due to damage to her left leg due to cerebral palsy (Tr. 377, 412), the records do not state that Plaintiff needs a cane either for ambulatory or balancing purposes. In fact, Plaintiff's medical records often indicate that she had a normal gait, station, and balance (Tr. 417, 511). Further, as stated by the ALJ during Plaintiff's consultative examination, Plaintiff admitted that she was able to walk without a cane (Tr. 48, 403, 405, 511). Therefore, the ALJ was justified in not considering Plaintiff's alleged need for a cane in his RFC assessment. *See Reynolds-Buckley v. Astrue*, No. 8:10-CV-1668-T-TGW, 2011 WL 2460919, at *5 (M.D. Fla. June 20, 2011) (finding no error in the ALJ's decision to implicitly reject a plaintiff's testimony that she needed a cane for ambulation when "the record contain[ed] no prescription for a cane, or other indication that the plaintiff require[d] an assistive device" and finding that "[s]ince the plaintiff has not provided any [medical documentation establishing the need for a hand-

held assistive device], she ha[d] failed to show that the use of a cane [was] medically required").

Finally, Plaintiff argues that because the ALJ's RFC failed to properly account for Plaintiff's migraine headaches, need for a cane to ambulate, and the severity of her mental impairments, the hypothetical question to the VE contained no accurate and comprehensive description of Plaintiff's impairments. For a VE's testimony to constitute substantial evidence that a claimant can adjust to other work, the ALJ must present the VE with a hypothetical that includes all of the claimant's impairments. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007); 20 C.F.R. § 404.1520(a)(4)(v). An ALJ need not, however, include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Commr. Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). As previously discussed, the ALJ properly rejected the alleged limitations caused by Plaintiff's headaches, mental issues, and ambulatory problems; therefore, the ALJ did not have to include such limitation in his hypotheticals to the VE.

## CONCLUSION

The ALJ's decision was supported by substantial evidence and employed the proper legal standards. Accordingly, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

ORDERED in Tampa, Florida, on September 20, 2019.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE